344 So.2d 559 (1977)
Daniel Nelson SILVA, Petitioner,
v.
STATE of Florida, Respondent.
No. 49094.
Supreme Court of Florida.
March 24, 1977.
*560 David J. Busch and Michael M. Corin, Asst. Public Defenders, for petitioner.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for respondent.
ADKINS, Justice.
By petition for writ of certiorari, we are asked to review the decision of the District Court of Appeal, First District, Silva v. State, 327 So.2d 107 (Fla.1st DCA 1976), which affirmed the conviction of defendant, petitioner herein, and upheld the trial court's denial of a motion to suppress evidence seized in the course of a search of his apartment. Petitioner assigns conflict with several Florida appellate decisions, but relies primarily on Lawton v. State, 320 So.2d 463 (Fla.2d DCA 1975). We have jurisdiction.
The facts of the case are as follows: Petitioner, Daniel Silva, and a Mrs. Brandon lived together from August, 1973, until New Year's Day, 1975. When petitioner moved in, they leased their apartment in the names of Mr. Silva and Mrs. Silva (who was actually Mrs. Brandon). Until a few months before his arrest, petitioner had paid the rent. Mrs. Brandon had lived in this same apartment for six years prior to the time petitioner moved in.
On New Year's Day, 1975, petitioner hit Mrs. Brandon in the mouth while her nine-year-old son watched. The son ran from the house screaming that he was going to call the police. Petitioner told Mrs. Brandon to go after the boy, which she did. Instead of returning home, however, she continued walking to a local convenience store where she called the police. In her call, she informed the police that petitioner had hit her and that he was a convicted felon and had guns in the closet.
She then returned home with her son but waited outside until the police arrived. When they arrived and Mrs. Brandon tried to let them in, she discovered the door was locked. In order to get in, Mrs. Brandon put her hand through the jalousies and unlocked the door from the inside. Once inside the apartment, she told the police that the guns were in the hall closet. Testimony at trial established that the closet contained only petitioner's belongings, that Mrs. Brandon went into it only when cleaning house, and that her son occasionally went in.
Petitioner told the police officers that he forbade them to search the closet. With Mrs. Brandon's consent, but over petitioner's objections, they conducted a warrantless search of the closet, found and took the guns, and arrested petitioner. The trial court denied a motion to suppress the evidence seized.
This case conflicts with Lawton v. State, supra. In Lawton, the defendant and his wife had separated. Two weeks after the wife moved out, she returned to their apartment to pick up her marriage license preparatory to filing for dissolution. When she went in, she found defendant with another woman and immediately phoned the police. When they arrived, defendant attempted to prevent them from entering and searching the apartment. At the wife's continued urging and over defendant's objections, the police searched the bedroom and seized marijuana and drug paraphernalia found therein. The trial court's denial of defendant's motion to suppress was reversed by the Second District Court of Appeal. The court held that assuming, without deciding, that the wife "had sufficient control of the premises to authorize her to consent to a search, ... the search *561 cannot stand because appellant was physically present on the premises and affirmatively objected to a search." Lawton v. State, supra, at 464 (Emphasis theirs.)
Though the law in Florida concerning a spouse's lack of authority to consent to a search of the couple's premises is not without exceptions, it has generally been held that the husband and wife relationship, without more, does not authorize one spouse to waive the constitutional rights of the other by consenting to a warrantless search. State v. Blakely, 230 So.2d 698 (Fla.2d DCA 1970) at 700; and Carlton v. State, 111 Fla. 777, 149 So. 767 (Fla. 1933). Situations in which a man and woman are living as husband and wife without being married have produced the opposite result. The living arrangements of a couple and the appearance of their relationship to the outside world may be identical to those of a married couple. However, the couple who have not been formally married have been more freely permitted to waive one another's constitutional rights against unreasonable searches. Baugus v. State, 141 So.2d 264 (Fla. 1962), and State v. Blakely, supra. The language in Blakely and Baugus, clearly indicate that the consent of a paramour will be sufficient to validate a search under circumstances in which the consent of a wife would not. On justifying their finding that the warrantless search of a hotel room was lawful, over the objections of co-defendant but with the consent of a female paramour, the Court stated, "The woman who shared the room with Sikalis could not be dignified as a wife." Baugus v. State, supra, at 268. In Blakely, the State argued that since, under Baugus, a mistress has authority to consent to a search of a hotel room, surely a wife must have at least as much authority to consent to a search of the house in which she and her husband live. The Second District Court held that the paramours in Baugus used the room as individuals and that the husband and wife relationship was of such a nature as to prevent either spouse from acting against the family's interest by consenting to a warrantless search of the other's property. State v. Blakely, supra, at 700.
Other state courts and some federal courts have held that husbands and wives generally do have authority to consent for one another to searches when the other spouse is absent. There are exceptions, however. In Kelley v. State, 184 Tenn. 143, 197 S.W.2d 545 (1946), the Tennessee court held that although the wife normally could consent, Mrs. Kelley had abused her duty to act in the family's interest, which was the basis of the authority conferred on her. By requesting and consenting to a search, in anger over her husband's having beaten her and in order to punish him, she had given up authority to voluntarily consent for her husband. The United States Court of Appeal for the Third Circuit in United States ex rel. Cabey v. Mazurkiewicz, 431 F.2d 839 (3rd Cir.1970), held:
"A new and intruding element which has not been isolated heretofore may be said to distinguish a third class of cases. This element is the consenting party's agreement to the search out of motives of hostility to the other, made with the intent to harm him by an antagonistic consent. Where it is possible to identify this element a serious question would arise whether the right to consent is not spent when it reaches this point of deliberate antagonistic intrusion on the rights of the other who has an equal right to possession or control. This would be especially true where a wife intentionally acts against her husband's interest, since she would not be acting in harmony with the marital relationship from which her joint right of ownership or control is derived, but in antagonism to it." At 843.
Even in states which authorize spousal consent, neither Mrs. Lawton's nor Mrs. Brandon's consent would have met the validity tests cited above.
In circumstances where a couple have joint dominion and control of a premises and one party is present and objecting while the other party has consented to a search without a warrant, the validity of the search should not hinge on the marital status of the parties. There is nothing *562 which distinguishes the married couple from the unmarried one that has any real bearing on the validity of a consent to a warrantless search.
Certain other relationships have been found inadequate to confer authority on the consenting party. Sons may not consent for fathers. Padron v. State, 328 So.2d 216 (Fla. 4th DCA 1976). Landlords may not consent for current tenants. Talavera v. State, 186 So.2d 811 (Fla.2d DCA 1966). And hotel clerks may not consent for a guest. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).
The justification for allowing any person to consent to a search which may result in the seizure of evidence against another is the authority that person has by virtue of his sharing dominion and control over the premises. The law is clear that if the person whose possessions are the object of a search is absent from the premises, another having joint control may validly consent to the search.
The question of the validity of a warrantless search when two parties having joint dominion and control are present, and one consents but the other objects, has been given very little consideration. Some cases dealing with consent to search in joint control situations emphasize that the party whose possessions were the object of the search was absent. Padron v. State, supra, at 271. The major United States Supreme Court cases on searches of jointly controlled property all involve fact situations in which the evidence was used against a party who was absent when consent to search was given. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).
One federal case deals with a present, objecting party having joint control of searched premises. The other party, her brother Frank, had consented to the search. The circuit court stated:
"Assuming that Frank gave his own consent for search of the apartment, his authority, if any, to act for his sister was rescinded by her expressed protest and her demand for a search warrant." Lucero v. Donovan, 354 F.2d 16 (9th Cir.1965) at 21.
The United States Court of Appeal for the 7th Circuit emphasized the importance of the absence of the party against whom the search is directed. In holding that a joint occupant could validly consent to a search which resulted in the seizure of incriminating evidence against the absent party, the court pointed out that had the party been present the result may well have been different. Citing Lucero v. Donovan, supra, the court stated:
"[E]vidence obtained in a search is inadmissible against a person having equal rights in the premises if he is present at the time of the search and does not consent... ." United States v. Robinson, 479 F.2d 300 (7th Cir.1973) at 303.
Though decisions in Florida on the effect of objections made by one joint occupant to a search to which the other has consented are limited to the cases directly involved here, the courts have previously given some general guidance. The Second District Court stated:
"But when constitutional safeguards are involved, if a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the defendant whose property was searched." Miller v. State, 137 So.2d 21 (Fla.2d DCA 1962) at 25.
It is only reasonable that the person whose property is the object of a search should have controlling authority to refuse consent. His rights are personal to him and derive from the United States Constitution. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Though a joint occupant should have authority to consent to a search of jointly held premises if the other party is unavailable, a present, objecting party should not have his constitutional rights ignored because of a leasehold or other property interest shared with another. *563 This is particularly true where the police are aware that the person objecting is the one whose constitutional rights are at stake.[1]
Another issue raised by this case is whether the area searched was jointly controlled or under the exclusive control of petitioner. The basis of the validity of searches which normally would require warrants but are conducted with the subject-party's consent is the party's authority to permit others to examine the property which belongs to him.
"There can be no serious doubt that when a defendant gives consent, freely and voluntarily, to a search of his own property, the necessity for a search warrant is obviated, and the defendant cannot then complain of the fruits of the search." (Emphasis supplied.) State v. Hysell, 281 So.2d 417 (Fla.2d DCA 1973) at 417.
Unless consent is given by the owner or rightful possessor of the property, a warrant must be obtained. The only exception to this consent is where consent by a joint owner has been obtained in the absence of the person whose property is the object of the search. Whether or not an area searched is under the joint dominion and control of the third party consenting has been a crucial question in some cases. These cases have generally been decided on the basis of the individual's reasonable expectation of privacy in the area, whether others generally had access to the area, and/or whether the objects searched were the personal effects of the individual unavailable to consent.
The reasonable expectation of privacy test was established in Katz v. United States, supra. The court held that the Fourth Amendment protects people  not simply areas  and that a person's expectation of privacy in an area is paramount to the character of the area itself. The Illinois Supreme Court invalidated the search of a son's room since, even though his mother had access to the room to clean it and had consented to the search, the son had locked the door when he left before the search and told his mother to let no one enter. The court held:
"It is apparent from the mere fact of the precautions taken that he believed that the locked rooms would not be gone into by anyone... . The test cannot be made merely on the basis of the mother's property right in the house, but rather consideration should be given to whether the totality of her actions as to the son made his expectation of privacy reasonable. The court properly found that the defendant's mother had set aside these rooms for the defendant's exclusive use, subject to her using the area for housekeeping purposes and for caring for his personal effects." People v. Nunn, 55 Ill.2d 344, 304 N.E.2d 81 at 86 (1973), cert. den. at 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 108.
Whether or not others generally have access to the area searched has been a means of gauging the third party's authority to consent to a search of the area. As seen in People v. Nunn, supra, the Illinois court did not see access for housecleaning purposes only to be sufficient to give her the joint control needed to authorize her consent. In United States ex rel. Cabey v. Mazurkiewicz, supra, in footnote 20 at 843, the court, citing numerous cases, stated:
"Thus it has been held that one who has an equal right of control or possession of premises generally does not thereby have authority to consent to a search of an area on the premises which is set aside for the exclusive use of the other."
The right of access and use by other members of a family was crucial to a decision of the Minnesota court. In upholding a search, the court held that a parent could consent to the search of an adult son's room under circumstances in which other family members had equal access to and use of the room. State v. Schotl, 182 N.W.2d 878 (Minn. 1971) at 880.
*564 Access has been a question in cases dealing with closet searches. In People v. Barbat, 49 Mich. App. 519, 212 N.W.2d 318 (1973) at 324, the court stated:
"The concept of common use must, of course, be examined in the light of the facts of the particular case. However, here there is no question but that either of the Bakers had full access to the closet and could have gone to it and obtained the shoes for the police."
In upholding the search of a closet consented to by a paramour who shared the closet with the defendant for storing their belongings, the United States Court of Appeal for the 7th Circuit, stated:
"[N]or does the defendant claim exclusive dominion and control over a specific room or portion of a room or particular area of the apartment." United States v. Robinson, supra, at 302.
Even if we were to decide that Mrs. Brandon had sufficient access to the closet to authorize her to consent to a search, it should have become apparent to the police that the objects in the closet were the personal effects of petitioner. In discussing cases authorizing a wife to consent to a search of the home in which she and her husband live, the Hawaii court stated:
"None of them goes so far as to hold that a wife in joint occupancy of the home can permit a search of her husband's personal effects to discover jewelry hidden in a cuff link case in a bedroom bureau drawer." State v. Evans, 45 Hawaii 622, 372 P.2d 365 (1962) at 372.
The Ohio court dealing again with a wife's consent to search her husband's personal effects, stated:
"With the emphasis on the wife's rights rather than her defendant-husband's, the rights of the husband have not disappeared but merely diminished in stature. To allow a search of his personal effects would unduly destroy the husband's rights against unreasonable searches." State v. McCarthy, 20 Ohio App.2d 275, 49 Ohio Ops.2d 364, 253 N.E.2d 789, 795 (1969), aff'd. 269 N.E.2d 424.
The United States Court of Appeal for the 8th Circuit assists in defining personal effects by giving a clear example of an object which is not a personal effect:
"By no stretch of the imagination can it be held that a bullet fired into a ceiling approximately a year before is `associated with person' or has an `intimate relation to' the person of the firer of the weapon." Roberts v. United States, 332 F.2d 892 at 898 (8th Cir.1964), cert. den. 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274.
The closet searched by the police with Mrs. Brandon's consent was easily separable from the rest of the premises. Mrs. Brandon did not have equal access to it, nor were any of her clothes or other belongings stored there. It should have been apparent to the police officers that the closet was set aside for petitioner's use. It held his belongings, and his rights were infringed by the police in searching them without his consent.
The decision of the District Court of Appeal is quashed and the cause is remanded with instructions to reverse the judgment and sentence of the trial court.
It is so ordered.
BOYD, SUNDBERG and KARL, JJ., concur.
OVERTON, C.J., and ENGLAND, J., dissent for the reasons expressed in the district court's opinion.
NOTES
[1] See Carter v. State, 199 So.2d 324 (Fla.2d DCA 1967) at 334 and 335, for a discussion of the importance of police obtaining warrants before conducting searches.