NIMMONS, Judge.
This is an appeal from an order denying the defendant’s motion to suppress evi *714 dence.[1] We affirm.
The defendant, a passenger on a commercial flight from Atlanta to Gainesville, exited the airplane upon arrival at the Gainesville. Municipal Airport. He was carrying a suitcase. He entered his automobile at the airport parking lot and commenced driving in a very bizarre and reckless manner. Proceeding down the road which runs adjacent to the parking lot, the defendant pulled over into the left lane (the oncoming traffic lane) and, according to witnesses, was “passing everything in sight” when his car collided with an airport sign at the entrance to the airport.
Dr. Gibbs, a Gainesville physician who had been seated next to the defendant on the flight from Atlanta, described what happened at the accident scene. The defendant exited his badly damaged car. Apparently striking his head against the windshield or steering wheel, he had blood all over his face. Gibbs said that the defendant was conscious and described his manner as excited, hyper and very distressed. The defendant refused Gibbs’ efforts to check his wounds and kept insisting excitedly, “Fve got to get out of here.” In view of the defendant’s obvious injuries and the undrivable condition of his car, Gibbs implored the defendant to stay. The reason given by the defendant for his desire to flee the scene was the fact that he was without a valid driver’s license.
As the police were approaching with flashing lights, the defendant told Gibbs, “You’ve at least got to take my luggage.” Gibbs said that he agreed to do so because he thought it would deter him from “split[ting] off into the woods somewhere.” Gibbs placed the suitcase in his car. The defendant said that he would contact Gibbs the next day.
After the officers arrived, they indicated that it was not necessary for Gibbs to remain any longer. Gibbs therefore departed but did not get very far before becoming suspicious as to why the defendant wanted him to take the suitcase. Gibbs therefore returned to the scene and informed the officers that the defendant had given him his suitcase. Officer Crummit testified that Gibbs told him that he did not know the defendant and did not know what to do with it. And so, according to Crum-mit, Gibbs gave him the luggage. Gibbs opened his trunk for them, the officers removed the suitcase, opened it — apparently it was not locked — and found the cocaine which is the subject of the trafficking charge. While this was occurring, the defendant was also still at the scene but there was no conversation with him regarding the suitcase. And so it is clear that the officers neither sought nor were given consent to search the suitcase.
We hold that the search is sustainable on the basis of the third party consent of bailee Gibbs. In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court said:
[Wjhen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed ... [a] sufficient relationship to the ... effects sought to be inspected, (footnote omitted)
415 U.S. at 171, 94 S.Ct. at 993. See also Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (where defendant left his unlocked duffle bag with his cousin with the understanding that cousin could use at least part of the bag, he “must be taken to have assumed the risk that [his cousin] would allow someone else to look inside”, 394 U.S. at 740, 89 S.Ct. at 1425).
Professor La Fave concludes that of “obvious importance in making the assumption-of-risk analysis is the extent to which the bailor made efforts to secure, even as against the bailee, the privacy of his effects.” La Fave Search & Seizure, A Treatise on The Fourth Amendment (2nd ed.), § 8.6(a). In order for the bailee to be entitled to authorize a search of the bailed *715 container, it is not essential for the prosecution to establish that the defendant/bail- or expressly authorized the bailee to open the container. United States v. Falcon, 766 F.2d 1469 (10th Cir.1985) (although defendant left at brother’s apartment a cassette labelled “Delta Enterprises, Confidential, Do Not Play,” brother could consent to playing of tape); Sartain v. United States, 303 F.2d 859 (9th Cir.1962) (where locked briefcase and the key were delivered by defendant to friend, friend may authorize police search even though forcible entry was necessary because the friend had misplaced key); State v. Buschkopf, 373 N.W. 2d 756 (Minn.1985) (where defendant left note for safekeeping with man she was living with and told him not to read it, he could consent to police examination of it as she “did not seal it or otherwise physically prevent [him] from looking at it”); State v. Schad, 129 Ariz. 557, 633 P.2d 366 (1981) (defendant, under arrest, turned his wallet over to his girlfriend, and thus assumed the risk that she would allow someone else to have the contents).
Common sense tells us that any bailor who did what this defendant did must reasonably assume that the bailee would open the suitcase and/or authorize the police to do so. Society does not recognize a reasonable expectation of privacy in these circumstances.
The trial court articulated two bases for denying the motion to suppress: (1) the defendant lacked standing to contest the search; and (2) the defendant abandoned the suitcase. Both of such grounds are subject to serious question. We address neither because the search is, contrary to appellant’s urgings, clearly sustainable on the basis of third party consent as discussed above. The cases cited by appellant are inapposite.
AFFIRMED.
SMITH, C.J., and ERVIN, J., concur.

. After the denial of his motion to suppress, the defendant entered a plea of nolo contendere to the offense of trafficking in cocaine, the trial court granting leave to the defendant to appeal the order denying the motion to suppress.