927 So.2d 52 (2006)
Hugo MARGANET, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1565.
District Court of Appeal of Florida, Fifth District.
March 31, 2006.
*53 James S. Purdy, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Rebecca Roark Wall, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Hugo A. Marganet ["Marganet"] appeals the denial of his motion to suppress. We reverse.
Marganet and his girlfriend, Wilma Luz Pinero ["Pinero"], became a target in a drug investigation after a tip from a confidential informant. The tip ultimately led to the traffic stop of a vehicle driven by Marganet, in which Pinero was a passenger. Pinero was separated from Marganet and offered to cooperate. She ultimately led police to some cocaine and heroin that was found inside a shaving kit in Marganet's suitcase located in a hotel room they occupied. Marganet was charged with possession of heroin with intent to sell or deliver and possession of cocaine. He filed a motion to suppress, alleging no valid consent had been given for the search of his suitcase and shaving kit.
At the suppression hearing, Agent Chiota[1] testified that while engaged in a drug investigation, agents conducted a traffic stop of a Nissan Xterra driven by Marganet. Pinero was a passenger in the vehicle. Agent Davison took charge of Pinero, who was willing to cooperate by giving consent for police to enter the hotel room where she and Marganet were staying. She produced a key she had in her purse, opened the room and invited officers inside to look for drugs. She began showing officers areas in which she knew there was drug paraphernalia and where some drugs were the last time she saw them. There were various items around the room. She told the agents:
this is my clothing, and my suitcases, and this is his stuff, and he keeps it and had ithe, being Hugo, had the heroin. Heshe related that he maintained custody of it because she was a user and he was afraid she would use it up.

(emphasis added). Pinero showed them places in which she thought there would be heroin and gave them permission to search those places. They first searched all open areas within the room and then began to search the closed containers. They eventually found heroin in Marganet's shaving kit, which was itself located inside a closed suitcase which Pinero had identified as belonging to Marganet.
Agent Randy Davison testified concerning the drugs found in the shaving kit:
Q. Okay. Where did you retrieve the heroin and cocaine from?
A. I know there wasthere was four of us in the room at the time. I know that there was one black bag lying near the sliding glass door that went outoutsidepardon meand thatthat bag was lying on the floor. And she said that there was some in there, probably in a black shaving kit. So we opened it up. She said thatright there (indicating), and she pointed to the shaving kit. We opened the shaving kitI think it was a shaving kit. It was *54 a black leathera black leather container
A. Okay.
Q.and we opened that up. And then we located theI believe that was the heroin baggies there.
Q. And she specifically directed you to that spot?
A. Directly to it.
After listening to argument of counsel, the court denied the motion to suppress, explaining in relevant part in its written order that Pinero had "apparent" authority to consent to a search of the suitcase and shaving kit and that the search was therefore legal. The order stated:
The issue is whether the officers had a reasonable basis to believe that Ms. Pinero had actual or apparent authority to consent to the search of the defendant's bags. The test which the court employs is one of "objective reasonableness." Florida v. Jimeno, [500 U.S. 248] 111S.Ct. [sic] 1801 [114 L.Ed.2d 297] (1991). In making this determination courts no longer draw a distinction between married and unmarried couples. Silva v. State, 344 So.2d 559 (Fla.1977). Facts known to the police that suggested Ms. Pinero did not have authority include that she identified the suitcase as belonging to the defendant, the contents were all a man's personal belongings, the suitcase was closed, and it was easily separable from the room and its other contents. Facts suggesting that Ms. Pinero did have authority to give consent include that it appeared she and the defendant were in a relationship, her information was specific in that she knew the shaving kit was inside the suitcase and that the drugs might be in the kit. She also said that the defendant was hiding the drugs from her which implies he put them in a place he thought she might not look as opposed to a place she was not allowed to go.
The court is satisfied that the officers believed Ms. Pinero had authority over the defendant's possessions or they would not have helped her leave the hotel with them. Now, after analyzing the facts the court finds that a typical, reasonable person in the same circumstances would have believed Ms. Pinero had authority to consent to a search of the defendant's bags.
Marganet filed a motion for reconsideration. He asserted that his girlfriend had no right to consent to a search of his suitcase, emphasizing:
In the instant case, there is a complete lack of information detailing that law enforcement made any inquiry of Ms. Pinero concerning her authority to enter into Mr. Marganet's luggage. A telling issue is the fact that she identifies the luggage for law enforcement as belonging specifically to Mr. Marganet. It is not identified as "our luggage" but "his luggage." Further, Ms. Pinero provides an indication to law enforcement that Mr. Marganet had hidden the drugs so she would not find them. It is not logical for law enforcement to draw a conclusion that Ms. Pinero had common authority or joint access to Mr. Marganet's luggage when she specifically advises them that Mr. Marganet must have placed the contraband in an area where he though she would not look.
The court denied the motion for reconsideration and Marganet pled nolo contendere to the charges, reserving the right to appeal the denial of his motion to suppress. Marganet argues on appeal that the trial court erred by holding that Pinero had the right to consent to a search of his suitcase and his shaving kit.
The leading United States Supreme Court case bearing on the issue of third-party *55 consent to search is United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), in which the defendant's girlfriend consented to a search of a room she was sharing with the defendant, resulting in the discovery of money from a bank robbery in a diaper bag located in the only closet in the room. In Matlock, which involves the issue of "actual authority" to consent to a search, the court held that "permission to search [can be] obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Id. at 170, 94 S.Ct. 988. In a footnote, the court explained that the right to consent rests not on the law of property:

but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 170 n. 7, 94 S.Ct. 988.
The right of a third party to consent to a search on behalf of a defendant was extended to those with "apparent authority" in Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Rodriguez established that even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's "apparent authority" to consent to the search. In Rodriguez, a former girlfriend of the defendant consented to a search of premises leased jointly in her name and that of the defendant, but in which she was no longer living. The girlfriend showed police a copy of the lease and retained a key to the premises, which she gave to them, along with instructions where drugs could be found in the residence. In finding that the search was constitutionally valid on the basis of "apparent authority" to authorize a search, the court explained:
What [Rodriguez] is assured by the Fourth Amendment itself ... is not that no government search of his house will occur unless he consents; but that no such search will occur that is "unreasonable." U.S. Const., Amdt. 4. There are various elements, of course, that can make a search of a person's house "reasonable"one of which is the consent of the person or his cotenant. The essence of respondent's argument is that we should impose upon this element a requirement that we have not imposed upon other elements that regularly compel government officers to exercise judgment regarding the facts: namely, the requirement that their judgment be not only responsible but correct....
* * *
... The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. See Archibald v. Mosel, 677 F.2d 5 (C.A.1 1982).
497 U.S. at 183-184, 110 S.Ct. 2793. In Rodriguez, the court cautioned:
[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding *56 circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment. . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?
Id. at 188, 110 S.Ct. 2793.
In this case, it is undisputed that Pinero had actual authority to consent to a search of the hotel room because she and Marganet had "shared use and joint access to or control over" the shared area. See United States v. Kimoana, 383 F.3d 1215, 1222 (10th Cir.2004) (person who was not registered guest at motel and had not paid for room, but who had stayed in room overnight, left his possessions there and carried key to room, had joint access and control over room and thus had actual authority to consent to its search). However, this is not dispositive of Pinero's right to consent to a search of Marganet's suitcase and shaving kit. See United States v. Karo, 468 U.S. 705, 725, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring); see also United States v. Ruiz, 428 F.3d 877 (9th Cir.2005) (authority to consent to a search of property does not necessarily translate into authority to search specific containers).
A number of courts appear to hold that common authority over the premises is sufficient to authorize a third party to consent to search personal property found on the premises. Most courts adhering to this viewpoint reason that the right of common authority over the premises establishes a right to access all property on the premises, at least in the absence of a contrary showing.[2] Some courts say that in entrusting the goods to a third party the defendant has assumed the risk that the third party would permit or consent to an inspection.[3]
*57 Nonetheless, based on Matlock, most courts find that there is no right on the part of a third party to consent to a search of personal property belonging to another person unless there is evidence of both common authority over and mutual usage of the property. See, e.g., United States v. Davis, 332 F.3d 1163, 1169 (9th Cir.2003) ("A third party has actual authority to consent to a search of a container if the owner of the container has expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access or control over the container."), quoting United States v. Fultz, 146 F.3d 1102, 1105 (9th Cir.1998).[4] This viewpoint appears *58 to be based on the language contained in Matlock, that "the right to consent rests not on the law of property but rests rather on mutual use of the property by persons generally having joint access or control for most purposes ...." 415 U.S. at 170 n. 7, 94 S.Ct. 988 (emphasis added). When police are told by a third party that the property belongs to another, the officers are obligated to make inquiries sufficient to establish that the person consenting to the search has both common control over the property and mutual use of it. See United States v. Salinas-Cano, 959 F.2d 861 (10th Cir. 1992); United States v. Jaras, 86 F.3d 383, 389 (5th Cir.1996) (when person giving consent admonishes an officer that a bag belongs to third party who is the subject of a search, this may be understood to deny joint access and control over the property); see also United States v. Infante-Ruiz, 13 F.3d 498, 504-505 (1st Cir.1994) (when third party consent to search vehicle and trunk is qualified by a warning that the briefcase belonged to another, officers could not assume without further inquiry that the consent extended to the briefcase); cf. United States v. Harrison, 679 F.2d 942, 947 (D.C.Cir.1982) (since there was nothing to demonstrate that the item searched was owned or in the exclusive control of the non-consenting spouse and since the item searched was not sealed, the consenting spouse had common authority over the searched item); White v. United States, 444 F.2d 724, 726 (10th Cir.1971) (since there was no indication that the item searched was the exclusive property of the non-consenting "spouse," the consenting "spouse" had common authority regarding that item).
Typical of those cases refusing to allow those with joint control of the premises to consent to a search of property clearly owned or identified as belonging to another is United States v. Salinas-Cano, 959 F.2d at 861. There, the Tenth Circuit considered the issue of whether the defendant's girlfriend had common authority over a suitcase owned by the defendant. After a controlled buy with the defendant, the police went to the girlfriend's apartment and asked permission to search it. The girlfriend consented to the search and led the police to the defendant's belongings. *59 During a search of the defendant's closed, but unlocked, suitcase a quantity of cocaine was found. At the suppression hearing, the police officer conceded that he knew that the suitcase he searched belonged to the defendant. The Tenth Circuit agreed that the girlfriend had no authority to consent to a search of the suitcase, even if she had the right to consent to a search of the apartment. The court explained that a consent to search closed containers within the home was valid only when given by one with common authority over or other sufficient relationship to the premises or effects sought to be inspected. The court explained that common authority rested on mutual use of the property by persons generally having joint access or control for most purposes. The court also noted that the government had the burden of showing the effectiveness of a third party's consent and that agents could not proceed without making further inquiry, to determine whether property about to be searched was subject to "mutual use" by the person giving consent. In Salinas-Cano, the court held that the government was therefore required to come forward with persuasive evidence of both shared use and joint access or control of a container in order to support third party consent. The Tenth Circuit also rejected the government's contention that the girlfriend had "apparent authority" within the meaning of Rodriguez, on the basis that the information known to the police officer was insufficient to support a reasonable belief in the girlfriend's authority to authorize a search of the suitcase.
Florida apparently adheres to the view that something more than mere joint control of the premises must be shown before a person has the right to consent to a search of property personal to another. See Silva v. State, 344 So.2d 559 (Fla. 1977). Silva involved a defendant and his girlfriend who had leased an apartment as husband and wife. The girlfriend called police after an incident of domestic violence and informed them that the defendant had hit her and was a convicted felon with guns in the closet. The girlfriend let police into the apartment and told them that the guns were in the hallway closet. The defendant forbade officers to search the closet, but they searched anyway and arrested him, after which he filed a motion to suppress. The court found that police had no right, stemming from the girlfriend's consent, to search a closet set aside for the defendant's exclusive use, over his objections. The court explained that:

Unless consent is given by the owner or rightful possessor of the property, a warrant must be obtained. The only exception to this consent is where consent by a joint owner has been obtained in the absence of the person whose property is the object of the search. Whether or not an area searched is under the joint dominion and control of the third party consenting has been a crucial question in some cases. These cases have generally been decided on the basis of the individual's reasonable expectation of privacy in the area, whether others generally had access to the area, and/or whether the objects searched were the personal effects of the individual unavailable to consent.
Id. at 563 (emphasis added). The court also relied heavily on the fact that the personal property found in the closet obviously belonged to the defendant. It went on to say that:
Even if we were to decide that Mrs. Brandon had sufficient access to the closet to authorize her to consent to a search, it should have become apparent to the police that the objects in the closet were the personal effects of petitioner. *60 In discussing cases authorizing a wife to consent to a search of the home in which she and her husband live, the Hawaii court stated:
`None of them goes so far as to hold that a wife in joint occupancy of the home can permit a search of her husband's personal effects to discover jewelry hidden in a cuff link case in a bedroom bureau drawer.' State v. Evans, 45 Haw. 622, 372 P.2d 365 (1962) at 372.
The Ohio court dealing again with a wife's consent to search her husband's personal effects, stated:
`With the emphasis on the wife's rights rather than her defendant-husband's, the rights of the husband have not disappeared but merely diminished in stature. To allow a search of his personal effects would unduly destroy the husband's rights against unreasonable searches.' State v. McCarthy, 20 Ohio App.2d 275, 49 Ohio Ops.2d 364, 253 N.E.2d 789, 795 (1969), aff'd. [26 Ohio St.2d 87] 269 N.E.2d 424 [(1971)].
* * *
It should have been apparent to the police officers that the closet was set aside for petitioner's use. It held his belongings, and his rights were infringed by the police in searching them without his consent.
Id. at 564.
Silva suggests that a third party's consent to search may be ineffective with respect to property clearly identifiable as belonging to another, in the absence of evidence of mutual use of the property. This was confirmed by Jones v. State, 648 So.2d 669 (Fla.1994), in which the court held that "[e]ven though hospital staff generally has joint access to and control of personal effects kept in a patient's room, the staff cannot consent to the search or seizure of the effects because it has no right to mutual use of a patient's belongings, as required by [Matlock]." Id. at 675 (emphasis added).[5]
Taken collectively, these cases suggest that a number of factors bear on the rights of a third party to consent to a search of a container. They include such factors as whether the property clearly belongs to one person; whether it is generally used by one person, whether it is freely accessible to others, whether the container is closed or open, whether it is locked or unlocked, and whether orders have been given not to open the container. The relationship of the parties and the nature of the property may also have a bearing on the right to consent to a search. As was pointed out in United States v. Basinski, 226 F.3d 829, 834 (7th Cir.2000), "it is less *61 reasonable for a police officer to believe that a third party has full access to a defendant's purse or a briefcase than, say, an open crate." Moreover, a wife may have a right of access to her husband's shaving kit that a roommate or girlfriend does not. The burden is on the State to show that police were given free and voluntary consent to enter the premises by someone with actual or apparent authority to do so. Williams v. State, 788 So.2d 334, 336 (Fla. 5th DCA 2001). Thus, when making entry or conducting a search, an officer must elicit sufficient facts from which he or she can determine that the person consenting to the search has common authority over the premises or property to be searched. Saavedra v. State, 622 So.2d 952, 959 (Fla.1993).
In this case, the State argues that Pinero had actual or apparent authority over Marganet's suitcase and shaving kit because:
the Defendant and his girlfriend were staying together in a hotel room. Items belonging to both of them were found all throughout the room. The girlfriend had a key to the room, and admitted the police officers. She pointed out the specific location of drugs. She knew exactly where the drugs were kept in the Defendant's suitcaseinside the shaving kit. Clearly, the girlfriend knew that the shaving kit held the drugs, knew where to find the shaving kit, and had access to it. There were no locks or other mechanisms to secure the suitcase and shaving kit. There was also no evidence that the Defendant had forbidden his girlfriend to allow anyone to open the shaving kit.
In fact, as soon as the search was complete, the hotel manager told the girlfriend that she must leave the hotel. She was forced to collect all their belongingsboth hers and the Defendant'sand load them on a baggage cart. She rolled the cart out to the parking lot, where she was to be picked up by someone.
The evidence in this case shows nothing more than location of the items on jointly occupied property. "For purposes of searches of closed containers, mere possession of the container by a third party does not necessarily give rise to a reasonable belief that the third party has authority to consent to a search of its contents." Basinski, 226 F.3d at 834.
Here, the items involved in the search a suitcase and a shaving casewere personal to the user and Pinero identified the items in question as belonging to Marganet. The testimony also made clear that the contents were wholly male. Pinero seemed uncertain of the contents of the suitcase, which was closed and sitting against the wall. There was no indication that she had been given permission to access either item or that she mutually used either item. In fact, the evidence was to the contrary. Pinero informed the police that Marganet was hiding drugs from her and that they might be hidden in the suitcase or shaving kit. Absent evidence that Pinero had mutual use of these items, or even a right to access to these items, the trial court erred in finding that Pinero had the right to consent to a search of these items.
For the same reason, the evidence is also insufficient to establish apparent authority on the part of Pinero to consent to a search. Rather, the facts known to the agents were such that they could have no objectively reasonable belief that she had authority over these items. It was incumbent on the agents to make sufficient inquiry to determine whether the property about to be searched was subject to "mutual use" by the person giving consent. *62 Saavedra; Salinas-Cano. This was not done.
REVERSED and REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] Most of the officers involved in this case appear to have been local officers on loan to the Drug Enforcement Administration and therefore were referred to as "agents."
[2] United States v. Richard, 994 F.2d 244 (5th Cir.1993) (upholding search of motel room consented to by the defendant's girlfriend, who had been staying in the room with him for several days; court found that her authority to consent extended to empty suitcases, trash bags, and dryer sheets in the room and seized during the search because no evidence had been presented showing that the defendant had limited his girlfriend's access to these items); White v. United States, 444 F.2d 724 (10th Cir.1971) (woman who held herself out as defendant's wife had right to consent to search of small cloth bag containing, among other things, travelers checks and false identification, where wife did not object to search or remark that it was exclusively defendant's property and defendant left her in complete control of room during his absence); People v. Posey, 99 Ill.App.3d 943, 55 Ill.Dec. 234, 426 N.E.2d 209 (1981)(holding defendant's girlfriend can consent to a search of their hotel room and his shaving kit as she "was given complete access to all areas of that room," despite her testimony that she was instructed not to open shaving kit and his testimony that she was forbidden from opening suitcase or shaving kit; claim was undercut by evidence that she was wearing shirt obtained from his suitcase); Bruce v. State, 268 Ind. 180, 375 N.E.2d 1042, 1072 (1978) (holding that because wife had joint access to the parties' bedroom, she could properly consent to the search of all areas therein, including the jewelry box over which her husband claimed exclusive access and control, in view of finding that wife generally had access to all areas of bedroom, including jewelry box); State v. Gordon, 23 Or.App. 587, 543 P.2d 321 (1975) (woman who had been living with defendant for eight months had right to consent to search of motel room and suitcase found in closet; no information in opinion as to who suitcase belonged to or if any other items were in suitcase).
[3] United States v. Davis, 967 F.2d 84 (2d Cir.1992) (owner of footlocker in which defendant stored some items could validly consent to its search and owner's consent extended to closed containers belonging to defendant that were found inside, since defendant assumed risk that footlocker owner might permit others to search it and its contents and owner had not agreed that he would not look inside); United States v. Miroff, 606 F.2d 777, 778-779 (7th Cir.1979) ("dominant" occupant of premises authorized to consent to search of defendant guests' personal belongings found in area subject to common use, especially because guests assumed the risk of inspection by assuring occupant there was nothing illicit therein); State v. Schad, 129 Ariz. 557, 633 P.2d 366, 372 (1981) (girlfriend authorized to consent to search of defendant's wallet, on ground that defendant assumed the risk she would permit inspection when he gave it to her); People v. Jenkins, 22 Cal.4th 900, 95 Cal.Rptr.2d 377, 997 P.2d 1044 (2000) (finding it was objectively reasonable for officers to believe that sister who granted consent to open-ended search of her home and handed officer her brother's briefcase had authority to consent to the search of defendant's briefcase, because it was reasonable for the officers to believe she had exercised control over the briefcase and had not only joint, but at the time of the search, exclusive access to it and control over it; court also said one who secures property at another's behest has right to consent to search of property).
[4] United States v. Waller, 426 F.3d 838 (6th Cir.2005) (defendant had reasonable expectation of privacy with respect to zipped, closed suitcase stored in bedroom at friend's apartment, friend did not have actual authority to grant consent to search and it was unclear whether defendant's suitcase was subject to mutual use, so that officers were not entitled to search suitcase without further inquiry); United States v. Basinski, 226 F.3d 829 (7th Cir.2000) (friend to whom defendant gave locked briefcase for safekeeping at his home did not have apparent authority to consent to search of briefcase); United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir.1992) (girlfriend lacked apparent authority to consent to search of defendant's suitcase left in her home, when he slept in the home several nights a week and maintained control over the suitcase, and there was no evidence his girlfriend used the suitcase); United States v. Gilley, 608 F.Supp. 1065 (S.D.Ga.1985) (host could not consent to a search of a guest's closed travel bag, even though the bag was left in an area of the premises over which the host had joint control); State v. Evans, 45 Haw. 622, 372 P.2d 365 (1962) (wife could not validly consent to the search of her husband's closed cuff link case that was found in a drawer to which she had joint access; court said cuff link case opened by the officers clearly was identifiable as the husband's and that case did not involve situation in which officers justifiably supposed that the person authorizing the search had the authority that he purported to have); Krise v. State, 746 N.E.2d 957 (Ind.2001) (male housemate could not validly consent to a search of a female housemate's purse, even though the purse was found in a bathroom that they both shared); Owens v. State, 322 Md. 616, 589 A.2d 59, 66-67 (1991) (officers could not reasonably believe occupant of apartment had authority to consent to search of luggage left behind by visitor, because there was no evidence of common authority over the bag); State v. Younger, 305 N.J.Super. 250, 702 A.2d 477 (1997) (although homeowner/wife consented to search of bedroom, she lacked authority to consent to search of closed change purse belonging to defendant/husband during search of home); People v. Gonzalez, 88 N.Y.2d 289, 644 N.Y.S.2d 673, 667 N.E.2d 323 (1996) (accomplice's sister could not give consent to search of defendant's duffle bag located in apartment defendant shared with accomplice and his sister where accomplice's sister had no apparent or actual authority to consent); see also United States v. Jaras, 86 F.3d 383 (5th Cir.1996) (driver's consent to search of vehicle did not reasonably extend to search of passenger's suitcases where officers were told that suitcases belonged to passenger even though passenger failed to object to search); United States v. Infante-Ruiz, 13 F.3d 498 (1st Cir.1994) (driver's consent to search of car did not extend to passenger's briefcase); United States v. Welch, 4 F.3d 761, 764 (9th Cir.1993) (third party who jointly had rented vehicle with defendant had authority to consent to a search of the vehicle but lacked actual or apparent authority to consent to a search of the defendant's purse located in the trunk of the vehicle, because there was no evidence of joint access or control or use of the purse); People v. James, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195 (1994) (driver's consent to search of her vehicle did not reasonably extend to a search of passenger's purse where purse belonged exclusively to passenger); State v. Suazo, 133 N.J. 315, 627 A.2d 1074 (1993) (where driver consented to search of vehicle but passenger told officer that red bag belonged to him, officer's reliance on driver's consent to search bag was unreasonable even if passenger did not object to search); State v. Allen, 254 N.J.Super. 62, 603 A.2d 71 (1992) (consent to search of vehicle by owner did not extend to suitcase in which she disclaimed ownership interest); State v. Caniglia, 1 Neb.App. 730, 510 N.W.2d 372 (1993) (male driver's consent to search of vehicle did not extend to female passenger's make-up purse as make-up purse was not item that officers could have reasonably believed belonged to male driver); State v. Williams, 48 Or.App. 293, 616 P.2d 1178 (1980) (consent by owner for search of vehicle did not validate warrantless search of cassette tape case owned by passenger); State v. Zachodni, 466 N.W.2d 624 (S.D.1991) (husband's consent to search of vehicle was not valid consent @for search of wife's purse).
[5] See also Brown v. State, 789 So.2d 1021 (Fla. 2d DCA 2001) (driver of vehicle had no right to consent to search of zippered fanny pack resting on passenger's lap when officer first saw it; court said that this "personal item, not generally shared between two persons, was not something that the driver could give a consent to search."); Velazquez v. State, 648 So.2d 302 (Fla. 5th DCA 1995) (summarily holding that defendant had no expectation of privacy in friend's residence and friend had authority to consent to search of room in his residence that contained boxes that defendant had left there); State v. Walton, 565 So.2d 381 (Fla. 5th DCA 1990) (driver's consent to search automobile and specifically contents of trunk extended to suitcase located in trunk over which passenger and driver had common authority, even though suitcase belonged to passenger; it was noted that officer conducting the search had no indication to whom the suitcase belonged, given its location and nature); Johnson v. State, 519 So.2d 713, 714 (Fla. 1st DCA 1988) (third party in whose possession highly suspicious defendant had left a suitcase had authority to consent to a search of the suitcase he identified as belonging to defendant).