WETHERELL, J.
Appellant entered a plea of nolo conten-dere to trafficking in marijuana, reserving the right to appeal the denial of his motion to suppress the evidence discovered during the search of his pick-up truck after a drug-dog’s sniff and alert during a traffic stop. Appellant contends that the trial court erred in denying the motion to suppress for three reasons: 1) the stop was pretextual because Appellant did not commit the alleged traffic violation; 2) the stop was extended beyond the time reasonably required to issue a citation; and 3) the dog’s alert did not give the officers probable cause for the search because the State did not establish the dog’s reliability under Harris v. State, 71 So.3d 756 (Fla. 2011), cert, granted, — U.S. — , 132 S.Ct. 1796, 182 L.Ed.2d 615 (2012). We affirm and write only to address Appellant’s third argument.
On February 3, 2011, after receiving information from the Florida Department of Law Enforcement (FDLE) that Appellant would be traveling through the area with drugs, a Department of Transportation (DOT) officer pulled Appellant over *120 after he observed Appellant commit a violation of section 816.126, Florida Statutes, the “Move Over Act.” During the stop, the officer deployed his dog, Sella, to perform a “walk around” sniff of Appellant’s truck. Sella alerted to the seam between the cab and bed of the truck in the vicinity of the truck’s tool box, and the subsequent search of the tool box revealed 28.6 pounds of marijuana wrapped in a vacuum-sealed package with an overwhelming odor of ammonia.
Appellant was arrested and charged with trafficking in marijuana. He moved to suppress the marijuana, his statements, and any observations of his demeanor during the stop. After an evidentiary hearing, the trial court denied the motion, except as to statements made by Appellant to FDLE officers who arrived on the scene of the traffic stop and questioned Appellant without the benefit of Miranda warnings. Pertinent to the issue we address in this opinion, the trial court found that Sel-la was sufficiently reliable for her alert to provide probable cause for the search of Appellant’s truck.
A trial court’s ruling on a motion to suppress comes to this court clothed with a presumption of correctness. See Perkins v. State, 979 So.2d 409, 411 (Fla. 1st DCA 2008) (citations omitted). This court reviews factual findings supporting a denial of a motion to suppress for competent, substantial evidence, while legal conclusions are reviewed de novo. See McKnight v. State, 972 So.2d 247, 249 (Fla. 1st DCA 2007).
Recently, in Harris, the Florida Supreme Court resolved a split in the district courts over the evidence required to establish probable cause for a warrantless search based on a drug-dog’s alert to a vehicle. The Court approved the approach of the Second District requiring that the trial court use a “totality of the circumstances analysis” in determining whether a dog is sufficiently reliable for its alert to establish probable cause for a search. See Harris, 71 So.Bd at 771. To allow the trial court to make this determination:
the State, which bears the burden of establishing probable cause, must present all records and evidence that are necessary to allow the trial court to evaluate the reliability of the dog. The State’s presentation of evidence that the dog is properly trained and certified is the beginning of the analysis. Because there is no uniform standard for training and certification of drug-detection dogs, the State must explain the training and certification so that the trial court can evaluate how well the dog is trained and whether the dog falsely alerts in training (and, if so, the percentage of false alerts). Further, the State should keep and present records of the dog’s performance in the field, including the dog’s successes (alerts where contraband that the dog was trained to detect was found) and failures (“unverified” alerts where no contraband that the dog was trained to detect was found). The State then has the opportunity to present evidence explaining the significance of any unverified alerts, as well as the dog’s ability to detect or distinguish residual odors. Finally, the State must present evidence of the experience and training of the officer handling the dog.

Id.

Here, Appellant contends that Harris requires reversal because the State failed to introduce evidence of Sella’s field performance, including the number of times that she has been deployed and her success and failure rate, and thus the trial court could not determine Sella’s reliability. However, Officer Kelly, Sella’s handler and partner, testified to her field performance. Although the records were not *121 admitted into evidence, they were made available to defense counsel, who used the records in cross-examining Officer Kelly during the hearing on Appellant’s motion to suppress. While admission of the records is preferable, where, as here, the records were available to both parties and utilized during the suppression hearing, the failure to admit the records is harmless. See Joe v. State, 73 So.3d 791, 793 (Fla. 5th DCA 2011).
Next, Appellant contends that Sel-la’s field performance reveals that she is not sufficiently rehable for her alert to provide probable cause for the search of his truck. We disagree.
Officer Kelly testified that Sella was deployed 522 times and she alerted 258 times, with contraband discovered 122 times and no contraband found 136 times.[1] However, in 22 of the 136 “false alerts” it was confirmed that drugs had been either recently used by an occupant of the vehicle or recently present in the vehicle searched. The State argued based on this information that Sella’s success rate was between 74% and 78%, depending on whether her alerts in the 22 cases involving residual odors were considered failures.[2] In its order denying the motion to suppress, the trial court adopted these calculations in determining Sella’s reliability and finding probable cause for the search of Appellant’s truck.
We agree with Appellant that the trial court erred in determining Sella’s reliability by using the State’s calculation based on the total number of deployments. Indeed, as the trial court pointed out in its order, the State’s calculation gives Sella “credit” for failing to alert when there is no way to assess whether she was correct because no search was performed.
That said, we disagree with Appellant’s contention that, in determining Sella’s success rate, the trial court should only consider the number of verified alerts and the total number of alerts, as was done in Wiggs v. State, 72 So.3d 154 (Fla. 2d DCA 2011). The Florida Supreme Court recognized in Harris that “[a]n alert to a residual odor is different from a false alert,” and in our view, an alert to a residual odor that the dog was trained to detect should not count either “for” or “against” the dog when determining its reliability. Here, taking into account the number of Sella’s successful alerts and discounting the alerts where there was no contraband discovered but there were confirmed residual odors, Sella’s success rate is approximately 52%.[3]
“Probable cause exists when ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ” Harris, 71 So.3d at 766 (quoting United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006)) (emphasis in original). Based on this low standard, Sella’s 52% success rate is more than sufficient to establish probable cause for the search of Appellant’s truck. Accord United States v. Carroll, 537 F.Supp.2d 1290, 1297 (N.D.Ga.2008) (“Even if [the dogj’s accuracy rate is only 52%, that level of reliability is sufficient for his alert to establish probable cause. [The dog]’s alert indicates the *122 presence of drugs by more than a preponderance of the evidence. [The dog]’s accuracy exceeds [the] ‘fair probability5 requirement of probable cause.”); see also United States v. Donnelly, 475 F.3d 946, 955 (8th Cir.2007) (a 54 percent success rating for the drug dog did not undermine the existence of probable cause, “taking into account the totality of the circumstances present at the scene ..., [the defendant’s] behavior and condition, [the dog’s] history and pedigree, and [the dog’s] positive indication of drugs within the vehicle”), cert. denied, 551 U.S. 1123, 127 S.Ct. 2954, 168 L.Ed.2d 278 (2007).
Moreover, even counting the alerts with no finds but confirmed residual odors “against” Sella using Appellant’s preferred method of calculation, her success rate is approximately 47%,[4] which itself does not undermine a finding of probable cause. See, e.g., State v. Nguyen, 726 N.W.2d 871 (S.D.2007) (holding that, given the totality of the circumstances, there was probable cause to search a vehicle after a drug-dog’s alert when the dog’s success rate was 46%).
In addition to evidence of Sella’s field performance, the State introduced considerable evidence regarding Sella and Officer Kelly’s training. Initially, Sella received ten weeks of training, five of which were completed with Officer Kelly. During this initial training, Sella learned the odors of cocaine and its derivatives, methamphetamine and its derivatives, heroin and its derivatives, and marijuana and its derivatives. She also received specialized training in “livestock” searches in which there is an overwhelming odor of something other than the narcotic (such as the ammonia in this case). Officer Kelly and Sella also received 16 hours of additional maintenance training per month, and they received yearly' certifications, earning a 100 percent certification rate. Additionally, in 2010, Officer Kelly and Sella earned the “top dog” award, as the highest-scoring dog and handler pair at DOT.
The training and certification evidence, along with the evidence of Sella’s successful field performance, provided the trial court an adequate basis to evaluate Sella’s reliability under the totality of the circumstances analysis required by Harris. The trial court’s finding that Sella is reliable is supported by competent substantial evidence and, based on that finding, the trial court properly determined that Sella’s alert provided the DOT officers probable cause to search Appellant’s vehicle.
In sum, for the reasons stated above, the trial court properly denied Appellant’s motion to suppress. Accordingly, we affirm Appellant’s judgment and sentence.
AFFIRMED.
THOMAS and MARSTILLER, JJ., concur.

. Appellant relied on different figures at the hearing on the motion to suppress, but the trial court accepted the figures testified to by Officer Kelly.

. The percentages correspond to a 26% failure rate calculated by dividing the total false alerts by the total deployments (136 -s- 522 = 0.2605) and the 22% failure rate calculated by dividing the non-residual odor false alerts by the total deployments ([136-22] -*■ 522 = 0.2183).

.122 h- (258-22) = 0.5169.

. 122 4- 258 = 0.4728