ROWE, J.
Cody Bennett appeals his judgment and sentence for possession of cannabis with intent to sell, arguing that the trial court erred in denying the defense motion to suppress evidence obtained in the search of his vehicle based on a police dog alert. Specifically, Bennett argues that the alert to his vehicle trunk by the canine, Argos, did not constitute probable cause because the dog’s reliability could not be established. We affirm, holding that law enforcement officers had a reasonable basis for relying on Argos’ alert to support probable cause for the search.
The showing the state must make to establish probable cause for a warrantless search of a vehicle based on a drug-detection dog’s alert to the vehicle involves a trial court’s determination of the legal issue of probable cause, which we review de novo. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Pagan v. State, 830 *984 So.2d 792, 806 (Fla.2002). However, the reviewing court must defer to a trial court’s findings of fact as long as the factual findings are supported by competent substantial evidence. See Connor v. State, 808 So.2d 598, 608 (Fla.2001); Blalock v. State, 98 So.3d 118, 120 (Fla. 1st DCA 2012).
At the hearing on the motion to suppress, the state presented the testimony of Lieutenant Francis, supervisor of the K-9 unit, and the testimony of Deputy Dug-gins, Argos’ handler. The state also presented the records relating to Argos’ training and performance history through those two witnesses. The testimony and evidence showed that Argos had been trained to detect the odor of marijuana, cocaine, heroin, and methamphetamine. According to Sheriffs Office policy, an activity report for a police dog is generated every time the dog’s paws come out of the K-9 unit truck, and Argos had approximately 380 detection reports on file with the Sheriffs Office at the time of Bennett’s arrest. During the narcotics detection in this case, Deputy Duggins deployed Argos to conduct a “free air search” (a sweep) around Bennett’s vehicle. Argos first alerted to the driver’s door when he put his nose on the door handle and quickly sat, as he has been trained to do when he detects narcotics. Deputy Duggins and Argos continued their sweep of the vehicle, and when Argos approached the trunk area, he quickly sat as an alert.
Following the suppression hearing, the trial court denied the motion, finding that under the totality of the circumstances, law enforcement officers had a reasonable basis for relying on Argos’ alert to support probable cause for the search:
Argos was recently certified by two national organizations with strict training standards and his training and field records, although imperfect, provide a sufficient basis to establish Argos’ alert was sufficiently reliable to provide probable cause to search. Thus, the Court finds that based on the totality of the circumstances, officers had a reasonable basis for believing that Argos was reliable at the time of search, and that Argos’ alert indicated a fair probability that drugs would be found in Defendant’s vehicle.
We conclude the trial court correctly determined that law enforcement had probable cause to search Bennett’s vehicle.
In Harris v. State, 71 So.3d 756 (Fla. 2011), the Florida Supreme Court established a strict test for trial courts to apply when determining whether an officer has a reasonable basis to believe a dog’s alert is sufficiently reliable to support probable cause.[1] However, this test was recently rejected by the United States Supreme Court in Florida v. Harris, - U.S. -, 133 S.Ct. 1050, 185 L.Ed.2d 61, (2013), where the Court reversed the Florida Supreme Court and held that Florida’s “demand” for “an exhaustive set of records” to establish the dog’s reliability was inconsistent with the “flexible, common-sense *985 standard” of probable cause set forth in Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Reviewing probable cause case law, the Supreme Court in Harris observed once again that “[t]he test for probable cause is not reducible to ‘precise definition or quantification.’ ” Id. at 1055 (quoting Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). Reiterating that a police officer has probable cause to conduct a search when the facts available support a reasonable belief that contraband or evidence of a crime will be found, the Court stated that probable cause decisions are based on commonsense evaluations as set forth in Gates:
Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable-cause] decision. ... All we have required is the kind of ‘fair probability’ on which reasonable and prudent [people,] not legal technicians, act.
Harris, 133 S.Ct. at 1055 (quoting Gates, 462 U.S. at 231-38, 103 S.Ct. 2317, 76 L.Ed.2d 527).
Under the Supreme Court’s “commonsensical standard” for demonstrating probable cause, courts are directed to consider the totality of the circumstances: “We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach.” Id. To illustrate, the Court discussed its reasoning in Gates:
In Gates, for example, we abandoned our old test for assessing the reliability of informants’ tips because it had devolved into a “complex superstructure of evidentiary and analytical rules,” any one of which, if not complied with, would derail a finding of probable cause. 462 U.S., at 235, 103 S.Ct. 2317, 76 L.Ed.2d 527. We lamented the development of a list of “inflexible, independent requirements applicable in every case.” Id. at 230, n. 6, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Probable cause, we emphasized, is “a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.” Id. at 232, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.
Harris, 133 S.Ct. at 1056. Specifically addressing the standard for probable cause for a warrantless search of a vehicle based on a drug-detection dog’s alert, the Supreme Court concluded that “[a] sniff is up to snuff’ when “all the facts surrounding a dog’s alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.” Id. at 1058.
Under the Supreme Court’s holding in Harris, the record in this case demonstrates a reasonable basis to support a finding of probable cause under the totality of the circumstances. The state introduced testimony regarding Argos’ certification and weekly training requirements. Deputy Duggins testified regarding the selection process for the dogs as well as the procedures in place for dogs that do not meet the requirements. Duggins testified that Argos was certified by the North American Police Dog Association. Argos’ field performance records and training records were introduced. Although Bennett presented reports indicating Argos has a history of alerting to residual odors, the state pointed out that even considering the unsubstantiated alerts, Argos still had approximately a 90% success rate. Further, the testimony reflected that Argos’ handler was well-trained and extremely experienced in working with and training drug-detection dogs.
Bennett argues that Argos’ alert should be held as unreliable based on the dog’s *986 prior alerts to residual odors. However, this court in Blalock v. State, 98 So.3d 118 (Fla. 1st DCA 2012), rejected that argument, concluding that the detection of residual odors, at least those the dog is trained to detect, should not be taken into account either way when calculating the dog’s reliability. Id. at 121. Further, Bennett’s argument is not persuasive under the facts in this case. No search of the vehicle was performed until Argos completed the entire sweep around the vehicle, and in the process of that sweep, Argos not only detected drugs on the car door handle, but Argos also detected drugs in the trunk area of the vehicle, where the drugs in this case were discovered. Under the Supreme Court’s holding and reasoning in Harris, the alert to the door handle would not have been sufficient to discredit the dog’s reliability to support probable cause:
A detection dog recognizes an odor, not a drug, and should alert whenever the scent is present, even if the substance is gone ... [A] well-trained dog’s alert establishes a fair probability — all that is required for probable cause — that either drugs or evidence of a drug crime ... will be found.
Id at 1057.
We hold that under the totality of circumstances standard for probable case, Argos’ sniff was up to snuff, and the trial court did not err in denying Bennett’s motion to suppress based on a determination that the police officers had reasonable suspicion to support probable cause for the search of the trunk of Bennett’s vehicle.
We, therefore, AFFIRM.
THOMAS and WETHERELL, JJ., concur.

. In Harris, 71 So.3d at 774-75, the Florida Supreme Court held that to demonstrate whether an officer has a reasonable basis to believe a dog’s alert is sufficiently reliable to provide probable cause, the state must present evidence of the dog’s training and certification records, an explanation of the meaning of the training and certification, field performance records (including unverified alerts), and evidence concerning the experience and training of the dog's handler. Id. at 775. There the supreme court focused on evidence of the dog’s performance history, including how often the dog has alerted in the field without illegal contraband having been found, evidence to show whether a handler might have a tendency to cue the dog to alert, and “a dog’s inability to distinguish between residual odors and actual drugs.” Id. at 774.