IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

     Appellant,

v.

JEFFREY D. WILLIAMS,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-5510

Opinion filed January 15, 2016.

An appeal from the Circuit Court for Leon County.
James O. Shelfer, Judge.

Pamela Jo Bondi, Attorney General, Matthew Pavese, Assistant Attorney General,
and Jack Campbell, Assistant State Attorney, Tallahassee, for Appellant.

Kevin Alvarez of Anabelle Dias, P.A., Tallahassee, for Appellee.

ROWE, J.

The State appeals an order granting Jeffrey D. Williams' motion to suppress

marijuana found in a package received by a third party at the third party's address

where Williams was neither the sender nor the addressee even though he was the

intended recipient. As a result of the search of the package, Williams was charged

with conspiracy to possess more than twenty grams of marijuana with the intent to

sell.  The trial court granted Williams' motion to suppress the evidence found as a result of the search of the package, finding that law enforcement should have known that the third party did not have authority to consent to the search.  Because the factual findings in the trial court's order are not supported by competent, substantial evidence and because Williams lacks standing to challenge the search, we reverse.

*Facts*

The charges against Williams arose from a joint investigation between the United States Postal Service and the Tallahassee Police Department.  Local law enforcement was informed of a suspicious package that arrived overnight from California at the postal facility.  The package listed "T. Lopez" as the sender and "Key Phillips" as the addressee.  Law enforcement learned that no one named "Key Phillips" lived in the apartment complex designated on the address label.  An investigator delivered the package as addressed; Cynthia Richardson, who resided at the apartment, accepted the package, identified herself as "Key Phillips," and signed her name as "Key Phillips."  An investigator asked to speak to Richardson about the package and informed her of his belief that the package contained illegal narcotics.  She stated that she accepted the package on behalf of her friend, "Jeff."  When asked by the investigator if he could search the contents of the package, Richardson consented.  Upon opening the package, the investigator discovered

2

2.12 pounds of marijuana.

Following the search of the package, Richardson showed the officer text messages on her phone that indicated the package was intended for someone listed as "Jeff" in her phone contacts. Richardson agreed to text "Jeff" to tell him to come pick up the package. Williams was the person that responded to the text message, and he was arrested after knocking on Richardson's door. Based on the contents of the package delivered to Richardson, Williams was charged with conspiracy to possess more than twenty grams of marijuana with the intent to sell.

*Procedural History*

Williams sought to suppress the evidence of the contents of the package opened without a warrant, arguing that law enforcement could not have reasonably relied on Richardson's consent. He argued that the investigator's reliance was unreasonable because Richardson informed the investigator that the package did not belong to her, that she did not know the contents of the package, and that "Jeff" was the intended recipient of the package. At the beginning of the suppression hearing, the State argued that Williams lacked standing to challenge the search because he did not have a legitimate privacy interest in the package. In an attempt to establish Williams' standing, defense counsel presented the testimony of Investigator Daryl Morris.

Investigator Morris testified that inspectors at the post office flagged the

3

package as suspicious and attempted to deliver the package to the front office of the apartment complex; they were advised that no one by the name of "Key Phillips" lived in the apartment complex. When the package was delivered to the listed address, Richardson accepted the package, indicated that she was "Key Phillips," and signed for the package using that alias. Investigator Morris testified that he identified himself as a police officer before asking to speak with Richardson about the contents of the package. He testified that Richardson gave him permission to open the package. Investigator Morris did not obtain "Jeff's" contact information until after he had opened the package. He admitted that he did not have Williams' permission to open the package, but he explained that he did not know "Jeff" was Williams at that time. He testified that Williams was never in possession of the package and Williams never claimed ownership of the package.

In the written order granting the motion to suppress, the trial court found that the package was addressed to "Keith Phillips" and that Richardson signed for the package as "Keith Phillips." The court concluded,

> Law enforcement obviously knew that Ms. Richardson was not Keith Phillips. Ms. Richardson informed Inspector Tabb that she was receiving the package for a friend named "Jeff." She then allowed officer Tabb to check her cell phone where he obtained a number for "Jeff". Tellingly, Officer Tabb never asked Ms. Richardson if she had the authority to open the package. No evidence was presented to show that she had either expressed authority or apparent authority to either open the package or give law enforcement the authority to open the package. The officers accepted her consent without question. With the knowledge available to them the officers knew or should

4

have known that Ms. Richardson did not have authority to consent and that a warrant was needed to open the package.

The State appeals, arguing that Williams lacked standing to challenge the search and that Richardson had authority to consent to the search of the package.

*Standard of Review*

When reviewing a trial court's ruling on a motion to suppress, this Court must determine whether the trial court's factual findings are supported by competent, substantial evidence. Simms v. State, 51 So. 3d 1264, 1265 (Fla. 2d DCA 2011). The trial court's legal conclusions are reviewed de novo. Id. The trial court's order in this case suffers from two flaws: (1) the trial court's factual finding that the police obviously knew Richardson was not the addressee is not supported by the record; and (2) the trial court's legal conclusion that Williams had standing to challenge the search and seizure of the package is erroneous.

*Factual Findings*

In the order on appeal, the trial court found that law enforcement impermissibly relied on Richardson's consent to search the package because law enforcement obviously knew that Richardson was not "Key Phillips."[1] This

---

[1] The trial court's order repeatedly refers to the alias used on the package as "Keith Phillips," not "Key Phillips." It is unclear whether this was a mere typographical error or whether this error contributed to the trial court's conclusion that law enforcement obviously knew that Richardson, a female, was not "Keith Phillips." Regardless of the type of error, the record does not support the court's conclusion that law enforcement obviously knew that Richardson lacked authority to consent

5

factual finding is not supported by the record. While law enforcement was aware that no one legally named "Key Phillips" lived at the address listed on the package, this knowledge did not eliminate the possibility that someone using the alias "Key Phillips" lived in the apartment. In fact, the evidence established that Richardson was connected to that alias. She held herself out as "Key Phillips" when she signed for the package at issue, and she admitted to using the alias. From the evidence presented at the hearing, it was impermissible for the trial court to reach the conclusion that law enforcement "obviously" knew that Richardson was not "Key Phillips."

*Standing*

Next, the trial court erred in determining that Williams had standing to challenge the search. Before a defendant may invoke the protections of the Fourth Amendment, he must establish standing by showing that he has a legitimate expectation of privacy in the area searched or the item seized. State v. Young, 974 So. 2d 601, 608 (Fla. 1st DCA 2008). "A legitimate expectation of privacy consists of both a subjective expectation and an objectively reasonable expectation, as determined by societal standards." Id. A legitimate expectation of privacy is not created by a mere ownership or financial interest in the item seized. United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987). "Whether an

_____

to the search.

6

individual possesses a constitutionally protected privacy interest depends upon the totality of circumstances." Id. Once the State objects to a defendant's standing, the defendant has the burden of proving that he had a legitimate expectation of privacy. Ingram v. State, 928 So. 2d 423, 427 (Fla. 1st DCA 2006).

When determining whether a defendant has a legitimate privacy interest in a package sent through the mail or container shipped via a transportation company that was subject to a warrantless search, courts have generally considered the following factors: (1) whether the defendant is listed as the sender or addressee of the package; (2) if there is a fictitious name listed on the package, whether there is a connection between the defendant and the fictitious name; and (3) whether the defendant can demonstrate a legitimate expectation of privacy in the location where the package was delivered. Williams is unable to establish standing under any of these standards.

First, a defendant who is listed as the sender or addressee may establish standing to challenge a search because a sender and/or addressee has a legitimate privacy interest in the package sent through the mail. United States v. Jacobsen, 466 U.S. 109, 123 n. 22 (1984); United States v. Goldsmith, 432 F.Supp. 2d 161, 170 (D. Mass. 2006). Conversely, a defendant who is neither the sender nor the addressee of a package generally has no privacy interest in the package and cannot assert a Fourth Amendment objection to its search. United States v. Pierce, 959

7

F.2d 1297, 1303 (5th Cir. 1992).

These principles are explained in <u>United States v. Smith</u>, 39 F.3d 1143 (11th Cir. 1994). In <u>Smith</u>, the United States Postal Inspector intercepted an envelope addressed to Raquel Kirkconnell, which he believed contained a controlled substance. <u>Id.</u> at 1144. The inspector confronted Kirkconnell, stated that he knew what was in the envelope, and informed her that he believed that she was being used to receive drugs in the mail. <u>Id.</u> Kirkconnell indicated that the letter belonged to Smith, and she gave the inspector permission to open the letter. <u>Id.</u> The envelope contained LSD on a blotter paper medium. <u>Id.</u> Smith moved to suppress the evidence seized from the envelope; he admitted that he had arranged to have the letter sent to Kirkconnell, but he insisted that he did not authorize her to open the letter. <u>Id.</u> Smith was equivocal about his ownership interest in the letter. <u>Id.</u> Based on Smith's equivocal testimony about his ownership interest and based on the fact that Smith was neither the sender nor the addressee on the package, the Eleventh Circuit upheld the lower court's findings that Smith did not have a legitimate privacy interest in the envelope and that he lacked standing to object to the search. <u>Id.</u> at 1144-45. The reasoning in <u>Smith</u> is equally applicable to the case before this Court. Williams was neither the sender nor the addressee of the package at issue. Also like <u>Smith</u>, Williams failed to establish an ownership interest in the package.

The circumstances in this case parallel the facts presented in United States v. Colon-Solis, 508 F.Supp. 2d 186, 188 (D.P.R. 2007). In that case, Jorge Colon-Solis shipped a box from New Jersey to Puerto Rico containing over $96,000 in cash concealed inside a comforter and pillows. Colon-Solis arranged to have the package shipped to his friend, Marilyn Madera, and she agreed to hold the package for him. Id. Even though Colon-Solis physically shipped the box, he listed Madera as both the shipper and recipient. Id. The package was selected for a random search by a customs agent who discovered the concealed money and seized the package. Id. When Colon-Solis arrived in Puerto Rico, he obtained the delivery slip from Madera and attempted to pick up the package. Id. at 189. The seizure led to Colon-Solis's indictment on multiple charges. Id. at 187-88. He moved to suppress the evidence obtained as a result of the search and seizure of the package, asserting that the warrantless search was unlawful. Id. at 188.

Even though he was neither listed as the sender nor the recipient, Colon-Solis argued that he had a privacy interest in the package because he was the actual sender and he was the intended recipient. Id. at 192. The district court noted that this was not a situation where the package was addressed to Colon-Solis under a fictitious name; rather, the package was addressed to an actual third person, Madera. Id. The district court held that Colon-Solis's status as the intended recipient was insufficient to confer a legitimate privacy interest in the package

9

because he effectively transferred his interest in the box to Madera when he listed Madera as both the sender and recipient. Id. When Madera received the box, she could have opened it at her discretion. Id. at 193. The court also determined that Colon-Solis's ownership interest in the money contained in the package did not extend to the shipping container itself. Id. at 193.

Here, Williams argues that he has standing to challenge the warrantless search because Richardson identified Williams to the investigator as the intended recipient of the package. We disagree. Even if the package was intended for Williams, "this does not confer a legitimate expectation of privacy because it was addressed to and intended to be received by another individual." Colon-Solis, 508 F.Supp. 2d at 192. By addressing the package to Richardson under her alias and sending the package to Richardson's address, Williams lost the ability to control the use of and access by others to the package. Id. at 193. Upon receipt of the package, Richardson could have opened the package at her discretion. Id. Williams did not present any evidence to establish that Richardson was instructed to deliver the package to him unopened. Because Williams was neither the sender nor the addressee of the package, he had no legitimate expectation of privacy in the package.

Second, even where a defendant is not the sender or addressee, he may establish standing to challenge a search of a package if it is addressed to him under

10

his fictitious name.[2]  United States v. Villarreal, 963 F.2d 770, 774 (5th Cir. 1992) ("Although the consignee of the drums was technically a fictitious person named Roland Martin, this court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names.").  In United States v. Garcia-Bercovich, 582 F.3d 1234, 1236 (11th Cir. 2009), a transportation company received a shipment of thirteen boxes addressed to "Angel at Natural Heat Systems" that was later discovered to contain 800 pounds of marijuana.  Id.  Soon thereafter, Angel Garcia-Bercovich arrived to pick up the shipment and was arrested.  Id.  On appeal, the Eleventh Circuit agreed with Garcia-Bercovich's argument that he had standing to challenge the search because the package was addressed to "Angel at Natural Heat Systems."  Id. at 1237.

In United States v. Richards, 638 F.2d 765, 767 (5th Cir. 1981), Raymond Richards opened a post office box in the name of Mehling Arts & Crafts.  A sealed package addressed to Mehling Arts & Crafts was inspected by a customs official who discovered the package contained heroin.  Id.  Richards was arrested after he took possession of the package and was charged with possession with the intent to distribute.  Id. at 768.  Richards presented evidence that he started Mehling Arts &

---

[2] The dissent, in footnote 9, discusses the "unremarkable practice" of a person employing an alias and cites to authority supporting the rule that a defendant may establish a privacy interest in a package addressed to a defendant's alias or pseudonym.  However, as explained infra, this line of authority has no application whatsoever to the facts presented in this case because Williams presented no evidence that he ever used the alias "Key Phillips."

11

Crafts as a mail order export/import business. Id. When addressing whether Richards had standing to challenge the search of the package, the court focused on the fact that the package was sealed and addressed to Mehling Arts & Crafts, which was essentially Richards. Id. at 770. Even though Richards denied ownership of the package, the court concluded that he still had a legitimate expectation of privacy in a package that was in effect addressed to him. Id.

Williams also cannot establish standing under this line of authority. Here, Williams presented no evidence to connect him to the alias, "Key Phillips." Rather, the only evidence offered at the suppression hearing and in the record established that it was Richardson, not Williams, who used "Key Phillips" as an alias. Richardson signed for the package using that alias, she held herself out as "Key Philips" to the investigator, and she admitted to using that alias. Thus, unlike Garcia-Bercovich and Richards, Williams cannot establish standing to challenge the search based on a claim that the package was addressed to him under a fictitious name.

Third, a defendant may establish standing to challenge a search of a package that is not addressed to him or to him under a fictitious name if he shows a legitimate expectation of privacy in the location where the package was delivered. United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he

12

personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ."); see also United States v. Johnson, 25 F.Supp. 3d 1034 (W.D. Mich. 2014) (holding that Johnson did not have standing to challenge the seizure of an envelope that he did not send, that was not addressed to him, and that was not mailed to his address); United States v. Elgin, 57 Fed. Appx. 659 (6th Cir. 2003) (holding that a defendant did not have standing to challenge the search and seizure of a package where the package had not been sent by the defendant, addressed to the defendant, or mailed to the defendant's address).

In United States v. Arrendondo, 2012 WL 1677055 (M.D. Fla. May 14, 2012), a package sent from Mexico to Florida was inspected by federal agents who discovered that the package contained cocaine. Id. at *1. The package was addressed and delivered to Aura Sanayoa in Estero, Florida. Id. Subsequently, Sanayoa delivered the package to Luis Arrendondo who was arrested on multiple charges. Id. During questioning, Arrendondo told law enforcement that he was receiving the package for a member of a local drug group and that Sanayoa was his co-defendant's sister-in-law who received pizzas and children's toys for her family in exchange for accepting delivery of the package. Id. at *3. The district court concluded that Arrendondo lacked standing to challenge the search of the package because he failed to show a sufficient connection between himself and the package. Id. at *4. The court relied on the fact that Arrendondo was neither the sender nor

13

the addressee on the package and the fact that Arrendondo had no connection to the location at which the package was received when determining that he lacked standing to challenge the search of the package.  Id.

As in Arrendondo, Williams failed to demonstrate a legitimate privacy interest in the location where the package was delivered and searched.  He presented no evidence showing that he had any privacy interest in Richardson's apartment.  In fact, there was no evidence of any sort of connection between Williams and Richardson's apartment.  Thus, in light of the above described factors, the trial court erred in concluding that Williams had standing to challenge the search.

*Conclusion*

Because Williams' status as the intended recipient of a package addressed to Richardson's alias and mailed to Richardson's address was insufficient to establish a legitimate privacy interest in the package, he lacked standing to challenge the search of the package.  We, therefore, reverse the order granting the motion to suppress and remand for further proceedings.

WOLF, J., CONCURS WITH OPINION; BENTON, J., DISSENTS WITH OPINION.

WOLF, J., CONCURRING.

I fully concur in Judge Rowe's well-reasoned opinion that appellee has failed to establish standing in this case.  I write only to emphasize that as a matter of public policy, society should not be willing to recognize a reasonable expectation of privacy in a mailed package unless a person asserting standing can meet one of the three criteria laid out in the majority opinion.

These criteria are broad enough to accommodate all reasonable use of the mail service, including legitimate use of an alias or a pseudonym, without providing undeserved cover to terrorists or criminal enterprises.  See U.S. v. Pitts, 322 F.3d 449, 459-61 (7th Cir. 2009) (Evans, J., concurring).

BENTON, J., dissenting.

The order granting appellee Williams's motion to suppress should be affirmed. An appellate court "'must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling,'" Patrick v. State, 104 So. 3d 1046, 1059 (Fla. 2012) (quoting Rolling v. State, 695 So. 2d 278, 291 (Fla. 1997)), not jettison the trial court's explicit findings in favor of its own inferences and speculation. See State v. Setzler, 667 So. 2d 343, 346 (Fla. 1st DCA 1995) ("A reviewing court is bound by the trial court's findings of fact—even if only implicit—made after a suppression hearing, unless they are clearly erroneous.").

The trial court order's substitution of "Keith" for "Key" as the fictitious addressee's first name is, as the majority opinion points out, a mistake, but this isolated, apparently typographical or transcription error is inconsequential. It has no logical bearing on the outcome of the case. Under binding precedent, the trial court's findings of fact control, absent clear error. All the material findings of fact are rock solid.

I.

People in the United States have a constitutionally protected expectation of privacy in first class mail and in sealed packages mailed or shipped by common carrier. See, e.g., United States v. Jacobsen, 466 U.S. 109, 114 (1984) ("Letters

16

and other sealed packages are in the general class of effects[3] in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package." (footnotes omitted)); United States v. Van Leeuwen, 397 U.S. 249, 251 (1970) (noting "[i]t has long been held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—

---

[3] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. (emphasis supplied). See also Art. I, § 12, Fla. Const. ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures . . . shall not be violated. . . . This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.") (Emphasis supplied.) "[I]f government agents themselves are to open containers that are sent by mail or private carrier, the requirements of the Fourth Amendment must be satisfied. Therefore, even if government agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless they first obtain a warrant, or unless some exception to the warrant requirement applies." United States v. Villarreal, 963 F.2d 770, 774 (5th Cir. 1992). See Ex parte Jackson, 96 U.S. 727, 735 (1877) ("[R]egulations excluding matter from the mail cannot be enforced in a way which would require or permit an examination into letters, or sealed packages subject to letter postage, without warrant, issued upon oath or affirmation, in the search for prohibited matter."); United States v. Richards, 638 F.2d 765, 770 (5th Cir. 1981) ("[S]ealed mail historically has been considered to have a high degree of privacy, and government intrusion into mailed parcels is limited by the fourth amendment.").

17

is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment"); United States v. Villarreal, 963 F.2d 770, 773-74 (5th Cir. 1992) ("Individuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view. . . . Individuals do not surrender their expectations of privacy in closed containers when they send them by mail or common carrier. . . . Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them.").

II.

Perhaps because the drug dog would not alert, the authorities made no effort to show probable cause in order to obtain a warrant in the present case. Cf. United States v. Elgin, 57 F. App'x 659, 661 (6th Cir. 2003) (alert by drug-detection dog provided probable cause for search warrant); United States v. Johnson, 25 F.Supp. 3d 1034, 1038 (W.D. Mich. 2014) ("The dog alerted on the envelope on August 16, at which time probable cause was established to detain the envelope for purposes of seeking a warrant."). The defense timely moved to suppress on the usual constitutional grounds because "the property was illegally seized without a warrant." Fla. R. Crim. P. 3.190(g)(1)(A). "Warrantless searches are presumptively unreasonable, though the Court has recognized a few limited exceptions to this general rule. See, e.g., United States v. Ross, 456 U.S. 798, 102

18

S.Ct. 2157, 72 L.Ed.2d 572 (1982) (automobiles); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent circumstances)." United States v. Karo, 468 U.S. 705, 717 (1984). To defeat the presumption of illegality attendant on a warrantless search—which is the state's burden, a burden it did not meet here—the state relies only on putative consent by Cynthia Richardson, who told the police the parcel belonged to somebody else and who never claimed authority to consent to the search of what the trial court found was Mr. Williams's parcel.

Consent is a question of fact. See Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990) ("As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises?" (quoting Terry v. Ohio, 392 U.S. 1, 21–22 (1968))); Barnes v. State, 75 So. 3d 1287, 1288 (Fla. 1st DCA 2011) ("[T]he evidence supports the trial court's determination that Appellant's wife had the authority to consent to a search of the couple's home."); Marganet v. State, 927 So. 2d 52, 61 (Fla. 5th DCA 2006) ("[T]he evidence is also insufficient to establish apparent authority on the part of Pinero to consent to a search. Rather, the facts known to the agents were such that

19

they could have no objectively reasonable belief that she had authority over these items.").

The state's burden of proof on consent as an exception to the warrant requirement includes foundationally the burden to prove authority to consent. "[T]he state has the duty to prove through specific facts that the third party has the authority over the particular object to be searched." Kelly v. State, 77 So. 3d 818, 825 (Fla. 4th DCA 2012). "To determine whether an officer's reliance [on consent based on apparent authority] was reasonable, courts presume that the officer was familiar with the applicable law. Then, the proper inquiry is whether a reasonable person familiar with the applicable law would have believed the third party had common authority over the premises or item searched.[4] If the basis for the

---

4 Taken collectively, these cases suggest that a number of factors bear on the rights of a third party to consent to a search of a container. They include such factors as whether the property clearly belongs to one person; whether it is generally used by one person, whether it is freely accessible to others, whether the container is closed or open, whether it is locked or unlocked, and whether orders have been given not to open the container. The relationship of the parties and the nature of the property may also have a bearing on the right to consent to a search. As was pointed out in United States v. Basinski, 226 F.3d 829, 834 (7th Cir. 2000), "it is less reasonable for a police officer to believe that a third party has full access to a defendant's purse or a briefcase than, say, an open crate." Moreover, a wife may have a right of

20

asserted authority is unclear, the officer must conduct further inquiry before relying on the third party's representations." State v. Young, 974 So. 2d 601, 610 (Fla. 1st DCA 2008) (citations omitted). In the present case, the trial court concluded, "[n]o evidence was presented to show that [Ms. Richardson] had either expressed authority or apparent authority to either open the package or give law enforcement the authority to open the package." The trial court also observed, "Tellingly, Officer Tabb never asked Ms. Richardson if she had the authority to open the package." Instead, "[t]he officers accepted her consent without question," even though she had told them the package belonged to somebody else.

III.

Sent from California, the parcel was addressed to "Key Phillips," a fictitious person, at an apartment occupied by Ms. Richardson. While she signed for the

<hr>

access to her husband's shaving kit that a roommate or girlfriend does not. The burden is on the State to show that police were given free and voluntary consent to enter the premises by someone with actual or apparent authority to do so. Williams v. State, 788 So. 2d 334, 336 (Fla. 5th DCA 2001). Thus, when making entry or conducting a search, an officer must elicit sufficient facts from which he or she can determine that the person consenting to the search has common authority over the premises or property to be searched. Saavedra v. State, 622 So. 2d 952, 959 (Fla. 1993).

Kelly v. State, 77 So. 3d 818, 826 (Fla. 4th DCA 2012) (quoting Marganet v. State, 927 So. 2d 52, 60-61 (Fla. 5th DCA 2006)) (emphasis omitted).

21

parcel before law enforcement (who had been told by apartment complex managers that nobody named Key Phillips lived at the complex) arrived and questioned her about the package, Ms. Richardson told Investigator Morris of the Tallahassee Police Department that the parcel belonged to "Jeff" and that she did not know what it contained. In short, she told him the parcel was not hers before he opened the package and found marijuana.

The trial court rejected the state's proffered justification for this warrantless search, finding law enforcement did not prove reasonable reliance on any apparent authority on Ms. Richardson's part to give consent to search the package. The trial court rejected the contention that she had joint access or control over the contents of the parcel she received on Mr. Williams's behalf.

> "Common authority" is derived from "mutual use of the property by persons generally having joint access or control for most purposes." The legal justification behind the doctrine of common authority is that when two people have mutual use of property, each assumes the risk that the other will permit the area to be searched. Even when a third party has the right to enter the property and inspect it for his or her own purposes, that person does not have constitutional authority to invite law enforcement officers to search the property unless he or she has common authority over the property.

Young, 974 So. 2d at 609 (citations omitted). Defense counsel asked, "Anything other than her signing for the package and anything else that gave you an indication that she had authority to consent to the opening of the package?"

22

Investigator Morris answered, "Nothing other than taking possession of it." On this record,[5] an appeals court is not free to reject the trial court's findings and substitute its own.

The trial court's finding that the state failed to prove common authority ought to be upheld. "An appellate court reviewing a ruling on a motion to suppress presumes that a trial court's findings of fact are correct and reverses those findings only if they are not supported . . . ." Cuervo v. State, 967 So. 2d 155, 160 (Fla. 2007). See also Fitzpatrick v. State, 900 So. 2d 495, 513 (Fla. 2005) ("A trial judge's ruling on a motion to suppress is clothed with a presumption of correctness with regard to determinations of historical fact."); Blalock v. State, 98 So. 3d 118, 120 (Fla. 1st DCA 2012) (same).

While apparent authority may exist even when real authority does not, the trial court also rejected the state's claim of apparent authority. The trial judge concluded that "[w]ith the knowledge available to them the officers knew or should have known that Ms. Richardson did not have authority to consent and that a warrant was needed to open the package." "The right of a third party to consent to a search on behalf of a defendant was extended to those with 'apparent

---

[5] When asked if Richardson said she had permission from Jeff to open the package, Investigator Morris answered, "She said, in my words, she said she was receiving the package for Jeff. . . . And by signing the name Key Phillips. She wouldn't have known to write Key Phillips without having prior knowledge that the package was coming. And she accepted the package and it was in her possession and I asked her could I open the package."

authority' in <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). <u>Rodriguez</u> established that even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's 'apparent authority' to consent to the search." <u>Marganet</u>, 927 So. 2d at 55. But the trial court did not find reasonable or good faith reliance,[6] and it is not at all clear why the majority opinion seems to.

The trial court's findings of fact as to apparent authority should be the end of the question. <u>See</u> <u>Kelly</u>, 77 So. 3d at 826 (The police officers "did not . . . elicit any facts to show that Morales had authority to permit their search of the red bag. In fact, during both searches of the home, Morales repeatedly identified property belonging to Kelly. The officers did not attempt to establish that Morales had joint control over those items, and indeed her statements to them showed that she did not have anything to do with the red bag."); <u>Marganet</u>, 927 So. 2d at 58 ("When police are told by a third party that the property belongs to another, the officers are obligated to make inquiries sufficient to establish that the person consenting to the search has both common control over the property and mutual use of it."). <u>See also</u>

---

[6] How could it? Officers knew that Ms. Richardson was not "Key Phillips," the fictitious addressee named on the package. After she signed for the package, Investigator Morris "talked to her about the package, asked her who she was getting it for, what was in it. She said she was receiving it for a guy named Jeff. She didn't know what was in it." Without anything more, he asked for her permission to open the package.

24

United States v. Jaras, 86 F.3d 383, 389 (5th Cir. 1996) (concluding that when person giving consent admonishes an officer that a bag belongs to third party who is the subject of a search, this may be understood to deny joint access and control over the property); United States v. Infante-Ruiz, 13 F.3d 498, 504-05 (1st Cir. 1994) (holding that when third party consent to search vehicle and trunk is qualified by a warning that the briefcase belonged to another, officers could not assume without further inquiry that the consent extended to the briefcase); United States v. Salinas-Cano, 959 F.2d 861, 862-63 (10th Cir. 1992).

The information known to law enforcement at the time Richardson "consented" supports the conclusion that she did not have the authority, actual or apparent, to consent to a search of the package. See Salinas-Cano, 959 F.2d at 864 ("The government has the burden of proving the effectiveness of a third party's consent. 'The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to "mutual use" by the person giving consent, "then warrantless entry is unlawful without further inquiry."' United States v. Whitfield, 939 F.2d 1071, 1075 (D.C. Cir. 1991) (quoting Rodriguez, 110 S.Ct. at 2801))" (emphasis & citation omitted).

25

The trial court's finding that officers "obviously knew" that Ms. Richardson was not the addressee is plainly correct. The record indicates the package was addressed not to her, but to the fictitious "Key Phillips." Apartment complex managers had already told them nobody named Key Phillips lived in the complex. The trial court found police knew she was not "Key Phillips" because she informed them, before they asked her for consent to open the package that the package belonged to "Jeff." See Evans v. State, 989 So. 2d 1219, 1222 (Fla. 5th DCA 2008) ("When a third party informs the officer that a closed container belongs to another person, it is not objectively reasonable for the officer, without making further inquiry, to search the container."). The majority opinion arbitrarily rejects well supported findings of fact.

## IV.

Even though appellee Williams was charged with possession of the contents of the parcel (marijuana) with intent to sell it, the state argues that he lacked standing to challenge an illegal search and seizure.[7] "The reasonableness of an

---

[7] Below the prosecutor questioned his standing "absent a showing of privacy interest in the package, if he wishes to go under oath and admit to ownership of the package, then we have a motion to suppress. But absent a showing of standing of the reasonable expectation of privacy, the burden does not shift to the State." In Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme Court did "recognize[ ] two analytically distinct but 'invariably intertwined' issues of substantive Fourth Amendment jurisprudence. The first is 'whether [a] disputed search or seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect,' the second is whether 'the challenged search or seizure violated [that]

expectation of privacy in a particular place or items depends on context." Young, 974 So. 2d at 608. The defense can meet its initial factual burden without the defendant's testimony, as the trial court pointed out, "if you can show it any other way, other than him admitting that that's his package." Whether "the owner of the good ha[s] a legitimate expectation of privacy in the area searched" is "a factual finding." United States v. Salvucci, 448 U.S. 83, 92 (1980). See United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

On the standing issue too—and based on even more evidence—the trial court decided the factual questions against the state. Again, the package was addressed to a fictitious, not to a real, person, which officers testified they knew before delivering the package. Investigator Morris testified without contradiction that Ms. Richardson told him the package belonged to the appellant. This testimony came in without hearsay or other objection. Information on her cellphone corroborated his ownership. There is no evidence that Mr. Williams ever disavowed ownership of the package or its contents. On the contrary, he arrived promptly at Ms. Richardson's apartment to pick up the parcel after

Fourth Amendment righ[t].'" Rawlings v. Kentucky, 448 U.S. 98, 111-12 (1980) (Blackmun, J., concurring) (citations omitted). As to the former, the test is whether the movant had a "reasonable expectation of freedom from governmental intrusion." Mancusi v. DeForte, 392 U.S. 364, 88 S. Ct. 2120 (1968).

27

receiving a text message on his phone informing him it was there. His flight once he saw the police underscored his connection to the parcel. (There is no question of abandonment here because the illegal search and seizure had already occurred.) The trial judge's finding that the appellant was the intended recipient of the package mailed to a fictitious addressee has ample support in the record.

In ignoring the trial court's findings and concluding the appellant had no reasonable expectation of freedom from governmental intrusion nor any property interest in the package, the majority opinion relies on decisions where letters or packages were addressed to actual persons who did not themselves challenge the search or seizure. The decision in United States v. Pierce, 959 F.2d 1297 (5th Cir. 1992), a collateral attack on ineffective assistance of counsel grounds, is clearly distinguishable. There a package containing cocaine was addressed to and received by an actual third person, not the defendant. Id. at 1299-1300; see id. at 1303 n.11 ("Here, the package was not addressed to a fictitious entity, or to an alter ego of Pierce, but to Crumpton."). Before and during trial, moreover, Pierce intermittently denied ownership of the package and contended that the package and its contents belonged to the named addressee. Id. at 1303. The ineffective assistance claims, based on trial counsel's failure to make certain arguments in support of a motion to suppress, were understandably denied. Id. Similarly, in United States v. Smith, 39 F.3d 1143 (11th Cir. 1994), the court affirmed the denial

28

of a suppression motion and concluded that the district court did not err by finding the defendant did not have a legitimate expectation of privacy in a letter sent to Kirkconnell (an actual person) given his "equivocal testimony regarding his ownership interest in the letter, and the fact that he was neither the sender nor the addressee of the letter." Id. at 1145.

Merely entrusting a parcel or other container to another does not forfeit the owner's right to freedom from arbitrary governmental search of the contents. See generally United States v. Canada, 527 F.2d 1374, 1378 (9th Cir. 1975) ("[S]he did not relinquish her protectible interest, nor her standing to object, by sharing access and control of the suitcase with her companion."); State v. Taylor, 968 P.2d 315, 320-21 (Nev. 1998) (holding airline traveler had standing as to his suitcase even though his niece, traveling with him, had checked it in her own name and retained the baggage claim ticket).

Where the addressee is not a real person, it becomes an evidentiary question whether the right to possession (or other factual basis for reasonably expecting freedom from governmental intrusion) asserted by a defendant moving to suppress is established. See, e.g., Villarreal, 963 F.2d at 774 (finding that "[a]lthough the consignee of the drums was technically a fictitious person named Roland Martin," both Villarreal and co-defendant Gonzales had a legitimate expectation of privacy in the drums (even though it was not clear whether Roland Martin was the alter ego

of Villarreal or Gonzales) because both were the immediate recipients of the drums and they conspired together to get them from the terminal, and stating that "this court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names"); United States v. Richards, 638 F.2d 765, 770 (5th Cir. 1981) (concluding Richards had a legitimate expectation that the contents of the package were private and had standing to assert Fourth Amendment protection, "[c]onsidering all the circumstances").[8]   In the present case, the trial court determined appellee Williams, as the owner and intended recipient of the parcel, had a protected privacy interest in the package and was entitled to assert the Fourth Amendment violation.

As a factual matter, the trial court ruled, Mr. Williams's expectation of privacy was both subjectively and objectively reasonable.  The trial court found he had made arrangements designed to prevent the package, although addressed to the fictitious "Key Phillips," from being opened by anyone else.  Ms. Richardson understood and agreed that, when she received a package addressed to Key Phillips, it was for the appellant and him alone, or so the trial court was permitted to find on this record.[9]

---

[8] In Richards, 638 F.2d at 769, "[t]he question of Richards' standing to contest the search was not raised in the court below."

[9] See United States v. Pitts, 322 F. 3d 449, 457-59 (7th Cir. 2003) (footnote omitted), where the court said, in response to a separate opinion:

The concurrence acknowledges that there are a number of legitimate reasons that a person might wish to send or receive a package using a nom de plume. Some authors and journalists, such as the incomparable Ann Landers, whose real name was Eppie Lederer, employ a pseudonym in their professional life. This is a common and unremarkable practice. In other situations, a celebrity may wish to avoid harassment or intrusion; a government official may have security concerns in using her real name or home address to receive mail; a business executive in merger talks might worry about potential investors misusing the information gained through the mail to manipulate the securities markets. See United States v. Evans, 2001 WL 243287, *5 (S.D. Ind. Jan 31, 2001), aff'd, 282 F.3d 451 (7th Cir. 2002), cert. denied, 537 U.S. 918, 123 S.Ct. 304, 154 L.Ed.2d 204 (2002). Indeed, a sender of mail might wish to remain completely anonymous for any number of reasons. The Supreme Court has held that anonymity of an author is not a sufficient reason to exclude literary works or political advocacy from the protections of the First Amendment. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 341–43, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As the Court noted there, an author may decide to remain anonymous for fear of economic or official retaliation, out of concern for social ostracism, or merely because of a desire to preserve as much of one's privacy as possible. McIntyre, 514 U.S. at 341–42, 115 S.Ct. 1511. So too with the sender or receiver of mail. Yet, because an alias was in this instance used to cloak the identities of the true parties to a narcotics transaction, our colleague concludes that the mailing should have no protection whatever.

There are two possible ways to interpret the concurrence. First, because some people employ an alias and use the mail illegally, everyone with a legitimate reason to remain anonymous should lose their expectation of privacy in the post. Alternatively, only people using an alias for legitimate reasons may retain an expectation of privacy in their mailings while those who

31

employ an alias for illicit purposes may not. Both constructions turn the Fourth Amendment on its head.

The first approach assumes that criminals can forfeit the privacy interests of all persons by using a confidential domain for nefarious ends. Any creative means that a person engaging in illegal activity devises to conceal that fact will lead to the end of privacy for persons engaged in wholly legitimate confidential activities. For example, if persons engaged in illegal drug sales often use hotel rooms for their transactions, or commonly employ cellular telephones to communicate the terms of their deals, then under the concurrence's analysis no one would retain a legitimate expectation of privacy in the use of hotel rooms or cellular telephones.

Under the second approach, only criminals forfeit their Fourth Amendment rights. The illegal contents of the package serve as an after-the-fact justification for a search. The concurrence concludes that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine sent through the United States mail by a sender using a fictitious name for himself and his addressee. Of course, the government did not know the package contained crack cocaine until it opened and inspected the box. We may not justify the search after the fact, once we know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant's activities, whether innocent or criminal. United States v. Fields, 113 F.3d 313, 321 (2d Cir.1997), cert. denied, 522 U.S. 976, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997). If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes. Presumably if no narcotics are found (or, as the concurrence speculates, no pipe bombs are found), the owner of the home would be able to bring a civil lawsuit for nominal damages for the technical violation of privacy rights. The Fourth Amendment requires more

32

Stepping back from the context of drug investigations, there are many situations in which a person may have perfectly legitimate reasons for arranging to have correspondence or packages shipped to him through another person he trusts. . . . Consider, for example, a celebrity's interest in avoiding harassment or intrusion, or a controversial public official's interest in the security of packages or envelopes, or a business executive involved in sensitive merger negotiations who wishes to ensure the secrecy of papers that could give a recipient the ability to take unfair advantage in securities markets. If the privacy of such a package were breached, surely the courts would allow the true owner, whom the courts would treat as a real party in interest, to assert those privacy interests in a civil claim against someone who caused injury by violating the privacy of the package.

United States v. Evans, 2001 WL 243287, *5 (S.D. Ind. 2001). See United States v. Allen, 741 F.Supp. 15, 17-18 (D. Me. 1990) (finding that, under all the circumstances in that case, the defendant had an objectively reasonable and subjective expectation of privacy in the envelope and its contents and explaining

---

than this.

Unlike the theoretical burglar in Rakas, who is plying his trade in a summer cabin during the off-season and who is wrongfully present on someone else's property, Pitts and Alexander had a right to use false names in sending and receiving mail. See Rakas v. Illinois, 439 U.S. 128, 143 n.12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable.

that the expectation was reasonable because federal law protected the envelope in the mail from unauthorized access and the defendant had arranged with the addressee to receive the envelope and deliver it to the defendant intact upon receipt). "When an individual asks someone else to receive mail for him, he does not by that fact alone surrender a reasonable expectation of privacy." Id. at 18 (citing 3 LaFave, Searches & Seizures § 11.3(f))); see also People v. Pereira, 58 Cal. Rptr. 3d 847, 853 (Cal. Ct. App. 2007) (finding "substantial evidence of objective factors that support the trial court's finding that defendant did not abandon his package," even though it was addressed to a fictitious name at a false address).

## VI.

The majority opinion relies on appellate decisions in cases where parcels were addressed to real persons who did not invoke their Fourth Amendment rights (Pierce and Arrendondo), which is clearly not the case here, and in which the appellate courts followed the rules and upheld the trial court's findings (Colon-Solis and Smith). Just as we "must accept the trial court's factual findings if there is evidence to support them" when the factual findings result in denial of a motion to suppress, Nelson v. State, 850 So. 2d 514, 522 (Fla. 2003); see also Burns v. State, 584 So. 2d 1073, 1076 (Fla. 4th DCA 1991), we must accept factual findings that support the grant of a motion to suppress when the motion is granted. See,

e.g., Jardines v. State, 73 So. 3d 34, 55 (Fla. 2011) (holding district court erred in reversing trial court order's which had granted motion to suppress, where "the trial court's factual findings [were] supported by competent, substantial evidence"); Markus v. State, 160 So. 3d 488, 490 n.1 (Fla. 1st DCA 2015) (deferring to the trial court's finding that the "townhome, including the garage area, was Appellant's residence" because the record "contain[ed] competent, substantial evidence to support this finding of fact"). The majority opinion turns its back on this neutral and time-honored rule of decision.

## VII.

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886). "If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face." Olmstead v. United States, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting). It is "less evil that some criminals

should escape than that the government should play an ignoble part. . . . [N]o distinction can be taken between the government as prosecutor and the government as judge. If the existing code does not permit district attorneys to have a hand in such dirty business it does not permit the judge to allow such iniquities to succeed." Id. at 470 (Holmes, J., dissenting).

"The Supreme Court may be the architectural supervisor that ensures that the grand scheme of the separation of powers and rule of law is properly sketched, but it is the lower courts that pound in the nails and properly square the corners to make sure the system functions during the workday even when the supervisor is not around." Scott E. Sundby, Everyman's Exclusionary Rule: The Exclusionary Rule and the Rule of Law (or Why Conservatives Should Embrace the Exclusionary Rule), 10 Ohio St. J. of Crim. L. 393, 411 (2013). In the present case, the court has regrettably missed the nail and pounded its thumb.